# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MARYLAND

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2012 JUN 14  PM 2: 54

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

| | | |
|---|---|---|
| Carmell Denise Carter | * | |
| 6771 West Branch Drive, Apt. 3508 | | |
| Houston, TX 77072 | * | |
| | * | |
| Claimant | * | |
| | * | |
| v. | * | |
| | * | |
| ConMed, Inc. | * | Civil Action No. : **CCB 12 CV 1 7 6 4** |
| d/b/a Conmed Healthcare Management, Inc. | | |
| 7250 Parkway Drive | * | |
| Suite 400 | | |
| Hanover, MD. 21076 | * | |
| | * | |
| Serve On: Mary M. Dimaio, Esq. | * | |
| Maher and Associates | | |
| 502 Washington Center | * | |
| Suite 410 | | |
| Towson, Maryland 21204 | | |
| | * | |
| and | | |
| | * | |
| Charles Eugene Potts, MD. | | |
| ConMed, Inc. | * | |
| 7250 Parkway Dr. | | |
| Suite 400 | * | |
| Laplata, MD. 20646 | | |
| | * | |
| Serve On: Mary M.Dimaio, Esq. | | |
| Maher and Associates | * | |
| Nottingham Centre | | |
| 502 Washington Avenue | * | |
| Suite 410 | | |
| Towson, Maryland 21204 | | |
| | * | |
| Health Care Providers | | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Carmell Denise Carter, by and through his attorneys, Roger J. Bennett, Frederic

C. Heyman and Bennett & Albright, P.A., hereby files suit against Defendants ConMed, Inc.

d/b/a Conmed Health Care Management, Inc. and Charles Eugene Potts, M.D., jointly and severally, and in support of same and states as follows:

## A. JURISDICTION AND VENUE

1. This action arises under the Laws of the State of Maryland. Substantial parts of the conduct giving rise to this action occurred in Bel Air, Maryland, which is within this Judicial District. Venue is conferred upon this Court by Title 28 United States Code, Sec. 1391(b) and (c). Jurisdiction on the basis of diversity of citizenship is conferred upon this Court by Title 28 Unites States Code, Sec. 1332. The amount in controversy exceeds the jurisdictional limits for the filing of such claims.

## B. JURY TRIAL DEMAND

2. Plaintiff hereby demands a Jury Trial in this action.

## C. THE PARTIES

3.      At all times relevant hereto, Plaintiff Carmell Denise Carter (hereinafter "Carter") was a pretrial detainee in the custody of the Harford County Sheriff's Office (hereinafter "HCSO"), a department of Harford County Government (hereinafter "Harford County").

4.      At all times herein relevant, ConMed, Inc., d/b/a Conmed Healthcare Management, Inc., (hereinafter "ConMed") was a corporation organized and existing under the laws of the State of Maryland, and was engaged in the business of operating an accredited licensed correctional healthcare company providing contracted medical care and treatment to the inmate population at, among other places, Harford County Detention Center, in Harford County, Maryland. ConMed provides its services for profit, and did, at all times herein relevant, hold

itself out, by and through its various agents, servants and/or employees, including but not limited to physicians, nurses, and allied health providers as possessing the requisite ability, skill, expertise, and for providing competent medical care and treatment. ConMed is also the employer of Defendant Charles Potts (hereinafter "Potts"), as well as numerous nurses providing services to inmates at the Harford County Detention Center, including Carter. As such, ConMed is a proper entity to be sued for, among other things, primary medical negligence and under the doctrine of respondeat superior.

5.     At all times relevant hereto, Defendant Charles Eugene Potts, M.D. (hereinafter "Potts") was a citizen of the United States and a resident of the State of Maryland and was acting under the color of state law in his capacity as a physician employed or retained by ConMed, HCDC, HCSO, and Harford County to provide medical services at HCDC. Defendant Potts is sued individually and in his capacity as agent, servant, and/or employee of Conmed.

### D. PREVIOUS LAWSUITS BY PLAINTIFF

6.     Plaintiff has filed other lawsuits dealing with the same facts involved in this action or otherwise relating to her detainment. A medical malpractice/negligence claim was filed in the Health Claims Alternative Dispute Resolution Office of Maryland on April 18, 2011 alleging a failure to provide adequate medical care to Carter while a detainee at Harford County Dentention Center. The parties to the lawsuit are Plaintiff Carter and Defendants ConMed and Potts, HCA Case No. 2011-218. The case has been waived to U.S. District Court, Northern Division on April 24, 2012. (A copy of the Complaint, Waiver, Certificate of Merit and Report are attached hereto as Exhibit 1).

-3-

7.      Also, an action under the Constitution and laws of the United States and brought pursuant to 42 U.S.C. §1983 was filed in United States District Court for the Northern District of Maryland on November 26, 2011 (Civil No. BPG-11-3062) to vindicate profound deprivations of her constitutional rights caused by the deliberate indifference of Defendants. The parties to the lawsuit are Plaintiff Carter and Defendants ConMed, Inc., its agents, servants, and employees including but not limited to the nursing staff and Potts, MD., as well as the Harford County Detention Center, the Harford County Sheriff's Office, and the Harford County Government. (A copy of the Complaint is attached hereto as Exhibit No. 2). The case is still pending and the parties anticipate that action being consolidated with the present action.

## E. FACTUAL ALLEGATIONS IN SUPPORT OF ALL COUNTS

8.      Carmell Carter (hereinafter, "Carter") was an inmate at the Harford County Detention Center in Harford County, Maryland at the time of the occurrences in this complaint.

9.      On or about October 31, 2008, at 03:27 a.m., Carter was placed in the Harford County Detention Center and the nursing staff at ConMed completed a health history screening of Carter indicating no current medical problems or significant health issues.

10.     On or about November 1, 2008 at 7:20 a.m., Carter complained of vomiting on the night prior and that she saw blood in it. Carter was seen by the RN (signature illegible) who assessed Carter's vital signs as follows: Blood pressure 150/101, heart rate 124, and respirations 20. The RN notified Nick Winder, PA-C via the telephone of Ms. Carter's symptoms who ordered, Phenergan 25mg (antiemetic) twice a day as needed for one day and a clear liquid diet for 24 hours. The physician order written by the RN (signature illegible) failed to note the route

-4-

of administration for the Phenergan but the RN administered 20mg of Phenergan by mouth. However, both the nurse and the physician's assistant failed to acknowledge or treat Carter's elevated blood pressure and heart rate.

11.     On or about November 1, 2008 at 2 p.m., Carter was evaluated because other inmates in housing area were complaining of Carter's vomiting. Carter was noted as weak and she was placed in observation. It was noted that Carter denied detoxing of any illegal street drug or other substance. At approximately, 3pm a telephone order for 50 mg of IM phenergan was obtained by nursing from Potts but was not administered until 5pm when Carter continued to vomit in the medical holding area. At approximately 6:40 pm, Carter was returned to the housing area. However, nursing (signature illegible)failed to complete vital signs or make an assessment of Carter prior to returning her to housing area.

12.     At approximately 11pm on November 1, 2008, Carter returned to the medical area. She had vomited 6-7 times since 5pm and she was complaining of profound weakness. Nursing (signature illegible) documented that Carter had poor skin turgor with dry mucus membranes indicating that she was dehydrated. Carter was hypertensive with a blood pressure of 153/105, and her heart rate was elevated at 107 bpm (beats per minute) with hypoactive bowel sounds. Dr. Potts was notified again via the telephone of Carter's status and he ordered for an IV and Droperidol IM (an antiemetic medication) for her nausea and vomiting. Nursing (signature illegible) was unable to establish a peripheral IV secondary to her dehydration. So, the fluids were provided by hypodermoclysis (subcutaneous infusion of fluids) in the left abdomen by the nursing staff.

13.     Throughout the night on or about November 2, 2008, Carter complained of

-5-

extreme thirst while she was in the medical holding area receiving the fluids. She was given ice chips but she vomited the clear liquid fluids as well. At approximately 8:30 am, she was medicated again with Droperidol and she was sent back to the housing area by S. Smith, RN.

14.     From November 2, 2008 to November 8, 2008, Carter continued to complain of stomach pain and nausea.

15.     On or about November 8, 2008 at approximately 3 pm, Carter returned to the medical area complaining of severe abdominal pain after eating lunch. B. Lange, RN., noted that Carter appeared to be in pain and had not had a bowel movement since October 31, 2008. B. Lange, RN., notified Potts who ordered magnesium citrate two bottles, Dulcolax 2 tablets, lactolose 30 cc and colase 100mg now. Potts failed to obtain a physical assessment of Carter since her admission on October 31, 2008 and medical decisions are based on assessment findings. Potts negligently attempted to treat Carter's medical condition over the telephone.

16.     On or about November 9, 2008 at approximately 2 am, Carter was brought to the medical care area with abdominal pain, and she was given one bottle of Magnesium Citrate. She remained in the medical holding area and at approximately 7:30 am, she had a large bowel movement but at the same time, complained of extreme weakness, no strength and difficulty with vision, stating "I can't see and asking for assistance with getting dressed." However, B. Lange, RN, failed to assist Ms. Carter. B. Lange, RN., knew or should have known at the time, that profound weakness and dizziness are serious side effects of magnesium citrate requiring immediate medical attention. Also, B. Lange, RN., failed to complete an evaluation or assessment including vital signs of Carter thereby she failed to make a nursing diagnosis which reflected the understanding of Ms. Carter's unstable condition. Instead, B. Lange, RN.,

-6-

negligently sent Carter back to housing without evaluating the validity of her complaints.

17.     At approximately 9:30 am on November 9, 2008, Carter returned to the medical area complaining of extreme thirst. An IV was started and despite two liters of fluid given, Carter continued to scream out with extreme thirst. Ms. Carter was experiencing extreme weakness and she rolled off the bunk onto the floor. B. Lange, RN., knew or should have known that Carter's symptoms of confusion, weakness and increased or uncontrolled thirst were deviations from the expected pattern of physiologic activity and were warning signs of severe electrolyte imbalances such as hypoglycemia or elevated magnesium level and that these symptoms warranted a detailed physical assessment of Carters condition. B. Lange, RN., failed to perform a physical assessment of Carter or determine if she was voiding and failed to report these signs and symptoms to the physician. As a result of the B. Lange, RN's negligence, Carter was allowed to continue with her complaints of weakness, dizziness and thirst while receiving her IV in the medical holding area until approximately 3:55 pm when an officer found Carter unresponsive, pulseless and with no respirations. 911 was called, CPR was started and Carter was taken to the hospital in full cardiopulmonary arrest.

18.     On or about November 9, 2008, Carter was taken to Upper Chesapeake Medical Center's Emergency Department in full cardiac arrest. Carter was found to have extremely dangerous electrolyte disturbances of hypoglycemia 36 mg/dl (normal 70-99), hypokalemia of 2.6 mg/dl(normal 3.7-5.2) and hypermagnesemia 13 mg/dl ( normal.4-2.0). The emergency room physician noted that Carter's abdomen was rock hard with absent bowel sounds. She was unresponsive, in acute renal failure and was oliguric (no urine output).

19.     On or about November 9, 2008, imaging studies in the Emergency Department

revealed a pneumoperitoneum from a ruptured duodenal ulcer. A surgical consult was performed and Carter required an emergency exploratory laparotomy where upon making the incision the physician encountered several liters of purulent fluid in her peritoneal cavity. The duodenum ulcer was repaired and extensive irrigation of her abdomen was required. Carter was taken to the intensive care unit in multi-system organ failure and on a ventilator. Carter was septic and required dialysis for her dangerously elevated magnesium level.

20.    On or about November 11, 2008, Ms. Carter developed seizure activity with right sided facial twitching. She remained unresponsive and on ventilator support. A neurologic consultation was obtained by Dr. Jason Birnbaum and his impression was hypoxic encephalopathy from the cardiac arrest and a CT was ordered.

21.    On or about November 13th, 2008, Carter developed ischemia in the right lower extremity from a right femoral arterial line and a stent was placed in her right iliac artery by Vascular Surgery. She was opening her eyes and would track objects but remained on ventilator support for respirations.

22.    On or about November 14th, 2008, while Carter was receiving dialysis, she experienced a severe episode of bradycardia and required the emergent placement of a pacemaker. She was alert but not following commands.

23.    On or about November 15th, 2008, Vascular surgery indicated that Ms. Carter's foot showed no improvement and had no doppler signals for pulses. The physician stated that she would most likely need an amputation in near future.

24.    On or about November 19th, 2008, Ms. Carter was showing slight neurological improvement but following commands. However, there was no evidence of renal recovery and

she remained on hemodialysis. She remained intubated and on a ventilator and plans were being made for an amputation of her right foot.

25.     On or about November 20, 2008, Ms. Carter was extubated but remained in the ICU.

26.     On or about November 22, 2008, Vascular surgery noted that Ms. Carter had dry gangrene of her right toes and would need a right transmetatarsal amputation.

27.     On or about December 2, 2008, Ms. Carter started to complain of right foot pain that was throbbing and vascular surgery discussed the options of a possible amputation with her.

28.     On or about December 4, 2008, Ms. Carter is taken to the OR for a right transmetatarsal amputation with placement of a wound vac due to right forefoot necrosis.

29.     On or about December 8, 2008, the right foot wound was healing well and Ms. Carter's pain was being managed with pain medications. She was ambulating with a rolling walker.

30.     On or about December 19, 2008, Carter was discharged to a rehabilitation facility in Pennsylvania.

31.     To date, Ms. Carter requires a prosthesis for her right transmetatarsal amputation and therapy for assistance with ambulation, she suffers from short and long term memory loss, speech and other cognitive difficulties.

## F. CLAIMS FOR RELIEF/CAUSES OF ACTION

### Count I

Carmell Carter, Claimant, hereby sues, ConMed, Inc, d/b/a Conmed Healthcare Management, Inc., and Charles Eugene Potts, MD, Health Care Providers, and states as follows:

32.     Claimant does hereby incorporate and re-allege all of the statements and allegations contained in paragraphs 1 through 31 of this Complaint as if fully set forth herein.

33.     Charles Eugene Potts, MD, individually and as the actual and apparent agent, servant, and employee of ConMed, Inc, d/b/a Conmed Healthcare Management, Inc., was negligent and breached prevailing standards of medical care in that among other acts and omissions he:

a.      Failed to perform a history and physical exam on Carter despite his knowledge of her abdominal pain and frequent phone calls from the staff for telephone orders for treatment and actions are based on assessment findings.

b.      Failed to ever obtain complete history and physical assessment of Ms. Carter.

c.      Failed to order appropriate lab tests and diagnostic studies to evaluate Ms. Carter's condition.

d.      Failed to timely diagnose Ms. Carter's medical condition.

e.      Failed to make a medical diagnosis which reflected the understanding that Ms. Carter's clinical symptoms and clinical course deviated from the expected norm.

f.      Failed to institute the appropriate medical treatment required to stabilize Ms. Carter's condition and instituted medical treatment which exacerbated Ms. Carter's unstable condition such as magnesium citrate and excessive laxatives.

g.      Negligently treated a medical condition over the telephone without performed a physical assessment and failed to monitor the patients response to treatment and meds prescribed over the phone.

h.      Failed to order for a timely transfer to the hospital for an evaluation of Ms.

-10-

Carter's condition.

  i.  Was otherwise negligent in his acts and omissions.

  34.  Health Care Providers, ConMed, Inc, d/b/a Conmed Healthcare Management, Inc., through their actual and apparent agents, servants and employees, including but not limited to nursing staff identified herein and others not so specifically identified, were negligent and breached prevailing standards of medical care in that among other acts and omissions, in that those actual and apparent agents, servants and employees:

  a.  Failed to perform a physical assessment of Carter's abdomen and assess for the presence of bowel sounds, distention or other clinical warning signs on November 1, 2008 when she complained of pain, nausea, and vomiting blood.

  b.  Failed to re-evaluate or perform an assessment of Carter's abdomen, response to medications administered or vital signs on November 1st, 2008 prior to sending Carter back to housing.

  c.  Failed to perform and document a physical assessment of Carter's abdomen on November 2, 2008 when she complained of extreme pain, vomiting ice chips and thirst despite being treated with medications and IV fluids.

  d.  Failed to respond or communicate Carter's response to treatment on November 2, 2008.

  e.  Failed to continuously evaluate and re-evaluate Carter's status after treatment on November 2, 2008 for response to interventions.

  f.  Failed to perform a physical assessment of Carter's abdomen for distention and the presence or absence of bowel sounds on November 8, 2008, when she

presented with symptoms of extreme pain and constipation.

      g.     Failed to recognize Ms. Carter's clinical symptoms of weakness, dizziness, and confusion as potential serious deviations from the expected pattern of physiological activity and as a result failed to respond to her deteriorating clinical condition.

      h.     Failed to timely institute proper nursing interventions required to stabilize Ms. Carter's condition and instituted measures which exacerbated her life-threatening and unstable condition.

      i.     Administered medications without recognizing the potential for dangerous side effects.

      j.     And were otherwise negligent in their acts and omissions.

      35.    As a direct and proximate result of the medical negligence of ConMed, Inc, d/b/a Conmed Healthcare Management, Inc., their agents, servants and/or employees including but not limited to Charles Eugene Potts, MD, and ConMed nursing staff Carmell Carter sustained severe, painful, and permanent bodily injuries which required and will continue to require medical care and attention, serve mental anguish and pain and suffering, has incurred and will continue to incur medical and other expenses, was caused to suffer a loss of earnings and/or earning capacity, and other-related expenses.

      36.    All of the injuries, losses, and damages sustained by Carmell Carter, past, present, and prospective, were caused solely by the negligence on the part of, ConMed, Inc, d/b/a Conmed Healthcare Management, Inc., their agents, servants and/or employees including but not limited to Charles Eugene Potts, MD and ConMed nursing staff without any negligence or want of due care on the part of Carmell Carter directly or indirectly thereunto contributing.

-12-

## G. PRAYER FOR RELIEF

**WHEREFORE** Plaintiff, Carmell Denise Carter, prays that this Court enter judgment against the Defendants, jointly and severally, and grant:

A.  Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

B.  Economic losses on all claims allowed by law;

C.  Special damages in an amount to be determined at trial;

D.  Pre- and post-judgment interest at the lawful rate; and

E.  Any further relief that this court deems just and proper, and any other appropriate relief at law and equity.

Roger J. Bennett
Fed. Bar No. 3219
Frederic C. Heyman
Fed Bar No. 06013
201 North Charles Street, Suite 500
Baltimore, MD 21201
*Attorneys for Plaintiff*